AMERICAN EXPRESS COMPANY,
Plaintiff,

v.

AMERICAN EXPRESS LIMOUSINE SERVICE LTD., a/k/a American Express Town Car Service, a/k/a American Express Lincoln Town Car Service, Donald Barfield and Ralph Cantone, Defendants.

No. CV 91–1117.

United States District Court,
E.D. New York.

Sept. 3, 1991.

---

Weiss, Dawid, Fross, Zelnick & Lehrman, P.C. by Richard Lehv, New York City, for plaintiff.

Edward M. Rosensteel, New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff American Express Company ("American Express" or "plaintiff") brings the above-referenced action against defendants American Express Limousine Service, Ltd. and its owners ("AELS" or "defendants") alleging trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), as well as trademark dilution and deceptive trade practices under New York law. N.Y.Gen.Bus.Law § 368–d (McKinney 1984). Defendants counterclaim for breach of a license agreement and bad faith and deception. Currently before the Court is plaintiff's motion for a preliminary injunction and summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, as to the trademark infringement and dilution claims. In addition, plaintiff seeks dismissal of defendants' counterclaims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, plaintiff's motions are granted.

## BACKGROUND

The following facts are undisputed. American Express, a diversified company involved in financial and travel-related services, as well as other services, owns its trade and service mark AMERICAN EXPRESS. It has used the mark since 1850 in connection with a diverse variety of services. Plaintiff has offered qualified consumers a charge card which prominently displays the AMERICAN EXPRESS service mark. At the end of 1990 there were over thirty-six million cards being accepted at over three million establishments worldwide. Plaintiff spends millions of dollars annually to promote its trade and service marks, particularly the AMERICAN EXPRESS Card, and thus asserts that it has acquired considerable recognition and good will.

Each year hundreds of thousands of vendors apply to become service establishments authorized to honor the AMERICAN EXPRESS card. For a business to become a service establishment it must enter into a service contract with American Express Travel Related Services Company, Inc., a wholly-owned subsidiary of plaintiff. By the contract, the service establishment agrees to prominently display both card application materials for customers and American Express identification, such as signs and decals. The contract additionally requires businesses which cease participating to remove such identification immediately.

On October 26, 1989, the defendant business was formed as a New York corporation under the name "American Express Limousine Service, Ltd." ALES is a business limited to providing car service in the tri-state area, primarily on Long Island. On November 15, 1989 plaintiff and defendants entered into a service contract which became effective December 7, 1989.

On March 8, 1991 an attorney for plaintiff sent a cease and desist letter asking defendants to cease using the term "American Express," or any derivation thereof. Plaintiff thereafter instituted this action on March 27, 1991. As noted above, defendants counterclaim for breach of a license agreement, and bad faith and deception. On April 19, 1991 plaintiff cancelled its service contract with defendant. Subsequently, plaintiff made the current motions.

## DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Second Circuit reiterated the summary judgment standards in *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54 (2d Cir.1987). There, the Court stated that "[t]he burden falls on the moving party to establish that no relevant facts are in dispute." 834 F.2d at 57 (citations omitted). Moreover, the court restated its well-established position that in deciding whether or

not a genuine issue has been raised, the district court "must resolve all ambiguities and draw all reasonable inferences against the moving party." 834 F.2d at 57 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980)). With these principles in mind, the Court turns to address the motion at bar.

■ In the trademark context, a party seeking a preliminary injunction must meet the requirements of the same test which controls the granting of preliminary injunctions in other contexts within the Second Circuit. *See Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78–9 (2d Cir.1981). That is, there must be a showing of "(A) irreparable harm and (B) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Id.* (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70 (2d Cir.1979)). With regard to the case at bar, plaintiff's Lanham Act claims of trademark infringement, pursuant to 15 U.S.C. § 1114(1), and unfair competition, pursuant to 15 U.S.C. § 1125, both apply the same test to determine whether there has been a violation of the Act. "If the ordinary purchaser is 'likely to be confused' as to the source of the goods by the acts of the infringing party, these Lanham Act sections have been abridged." *Invicta Plastics (USA) Ltd. v. Mego Corp.*, 523 F.Supp. 619, 622 (S.D.N.Y.1981); *see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986).

Plaintiff has satisfied the requirements of section 15 of the Lanham Act, 15 U.S.C. § 1065, thus ensuring that plaintiff's exclusive right to use its marks is incontestable in relation to "travel services," which among others includes transportation reservation services, as noted in its service mark registration. *See* Complaint at exhibit A; 15 U.S.C. § 1065. This constitutes conclusive evidence as to the "validity of the registered mark, . . . and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). Thus, plaintiff herein maintains an exclusive right to the use of its mark in connection with the specified services. Furthermore, incontestability bars any defenses against that registration other than those set forth in 15 U.S.C. § 1115(b)(1)–(8), *see Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194–96, 105 S.Ct. 658, 661–62, 83 L.Ed.2d 582 (1985), only one of which, laches, is asserted by defendants herein.

Because plaintiff's exclusive right to its mark is incontestable, it will prevail if it can establish a "'likelihood that the consuming public will be confused as to the source of the allegedly infringing product.'" *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 631 F.Supp. 735, 740 (S.D.N.Y.1985), *aff'd*, 799 F.2d 867 (2d Cir. 1986) (quoting *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 664 (2d Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980)).

■ The Second Circuit noted the factors to be considered in making a determination as to the likelihood of confusion in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). These factors include: (1) the strength of the mark, (2) the degree of similarity between the two marks, (3) the proximity of the products, (4) likelihood that the prior owner will bridge the gap, (5) actual confusion, (6) the good faith intent of the defendant in adapting the mark, (7) the quality of defendant's product, and (8) the sophistication of its buyers. *Id.* at 495. *See also Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1225 (2d Cir.1987). It is to be noted that no single factor is determinative; all must be considered together "according to the degree to which each is implicated." *Lois Sportswear*, 631 F.Supp. at 741 (citing *Lambda Electronics Corp. v. Lambda Tech., Inc.*, 515 F.Supp. 915, 925 (S.D.N.Y.1981)).

Although there may be issues of fact which arise with respect to the individual *Polaroid* factors, the application of these factors to the likelihood of confusion analysis often presents legal issues which are appropriately decided by the court upon a motion for summary judgment. *See Lois Sportswear*, 799 F.2d at 876. Accordingly, the Court turns to consider the likelihood of confusion in the case at bar in light of the *Polaroid* factors.

## POLAROID FACTORS

### Strength of Mark

Plaintiffs contend that the strength of the AMERICAN EXPRESS mark cannot be questioned, and defendants do not appear to challenge the strength of plaintiff's mark. Consequently, the Court accepts the recognition and goodwill claimed by plaintiff. Plaintiff, in addition to providing evidence as to the breadth of its activities, has shown itself to be extensively involved with the promotion of its mark. In addition to the recognition of its mark based on thirty-six million AMERICAN EXPRESS Cardholders charging billions of dollars worth of goods and services at over three million establishments world-wide in 1990 alone, plaintiff has spent millions of dollars annually to advertise and promote its mark, as well as the AMERICAN EXPRESS Card. These advertisements appear on radio, television, magazines, newspapers, in-store displays, direct mail, and statement inserts.

It is to be noted that "[a]rbitrary and fanciful marks which are non-descriptive and non-suggestive are by their very nature distinctive and strong trademarks." *Lois Sportswear*, 631 F.Supp. at 741 (citing *Plus Products v. Plus Discount Foods, Inc.*, 564 F.Supp. 984, 990 (S.D.N.Y.), *aff'd in part, rev'd in part*, 722 F.2d 999 (2d Cir.1983)). Moreover, plaintiff cites case law which supports the proposition that the AMERICAN EXPRESS mark is world renowned, *American Express Co. v. South American Express, Inc.*, 207 U.S.P.Q. 893, 895 (C.D.Cal.1980), and strong under the Lanham Act, *American Express Co. v. Vibra Approved Laboratories Corp.*, 10 U.S.P.Q.2d 2006, 2012 (S.D.N.Y.1989).

Thus, based on the above discussion, this Court finds that plaintiff's mark is a considerably strong one. At this point, it must be emphasized that the fact that the strength, recognition and renown of plaintiff's mark are not disputed weighs heavily in favor of plaintiff as to the first of the *Polaroid* factors.

### Similarity of Marks

Although defendants argue that whether the mark AMERICAN EXPRESS is used in connection with their limousine service is a material issue of fact precluding summary judgment, *see* Defendants' Memo. at 12, the individual defendants have nevertheless signed affidavits which claim that the name of their company is "American Express Limousine Service, Ltd." AELS incorporates the mark AMERICAN EXPRESS into the names of its corporation, adding it to the descriptive or generic term "Limousine Service". As plaintiff suggests, and defendants fail to controvert, the addition of the descriptive words "Limousine Service" to defendants' name does not erase the similarities between the marks. In fact, in the Court's view the addition of these descriptive words would be more likely to cause consumers to focus on the predominant portion of defendants' name, AMERICAN EXPRESS. *See, e.g., Bellbrook Dairies, Inc. v. Hawthorn–Mellody Farms Dairy, Inc.*, 253 F.2d 431, 432 (Fed. Cir.1958) ("'... one may not appropriate the entire mark of another and avoid a likelihood of confusion by the addition thereto of descriptive or otherwise subordinate matter'") (citations omitted).

In the case at bar, despite the fact that defendants have combined the entirety of plaintiff's arbitrary and fanciful mark with a descriptive term, the similarity of the marks is not lessened. In addition, both plaintiff and defendants provide travel services under their respective trade names, a factor which further militates in favor of plaintiff under the similarity peg of the *Polaroid* test. *See American Express*, 10 U.S.P.Q.2d at 2012.

### Proximity of the Products and Bridging the Gap

It appears uncontested that the mark AMERICAN EXPRESS is intimately con-

nected with "travel services." The name of its subsidiary is American Express Travel Related Services Company, Inc., and its service mark registration lists it in connection with travel services—specifically mentioning transportation reservation services. However, defendants contend that there exists an issue of fact as to whether plaintiff has used the mark AMERICAN EXPRESS in connection with the car service business. Although plaintiff has never claimed to be involved in such a business in the strict sense, it contends, without dispute by defendants, that: it makes reservations for such services; its charge card may be used for such services; and its mark is widely connected with such travel services. Although the service offered by defendants is not identical to those offered by plaintiff, they are in fact closely related, complementary services. *See Visa Internat'l Serv. Assoc. v. Visa Hotel Group, Inc.*, 561 F.Supp. 984, 991 (D.Nev.1983) (noting that while "financial and hotel services are different and noncompetitive, they exist as complementary products in the same general industry, i.e., the travel and entertainment industry, and they are definitely related"). Similarly, in the Court's view, plaintiff's services are closely related to services such as those offered by defendants' business.

The Court also must consider whether plaintiff, as the senior user of the mark, will bridge the gap between its product or service and that of defendants. *Polaroid*, 287 F.2d at 495. There has been no evidence presented by either side regarding any plans by plaintiff to perform precisely the same service as defendants. It appears that plaintiff believes its products already to be so proximate that there is perhaps no gap to bridge. Defendants make no argument against the proximity of the products, although they do claim that whether plaintiff is in the car service business is in dispute. However, even accepting that plaintiff is not, there is strong evidence to support the finding that the parties are in proximately related businesses, and it is

this point which defendants have not contested. Nor have they responded to plaintiff's charge that the car service business could reasonably come under the heading of "travel services." Accordingly, the Court finds that these factors also weigh heavily in favor of plaintiff.

*Actual Confusion and Intent of Defendant*

The affidavit of plaintiff's investigator claims that while serving a summons and complaint on defendant Donald Barfield, president of AELS, Barfield stated that "some of our clients think we are American Express, and we have to set them straight." *See* Plaintiff's Notice of Motion. On the other hand, Barfield's affidavit states that while being served he was questioned as to whether anyone really thought that AELS was the American Express Company, and that he jokingly responded to the effect that "we have to set them straight." *See* Defendants' Rule 3(g) statement. Furthermore, in his affidavit Barfield states that he was not aware of any customers who believed that AELS was an arm of plaintiff, or that it was associated with plaintiff. *See id.*

Since all reasonable inferences must be drawn in favor of the non-moving party, *Donahue*, 834 F.2d at 57, this Court cannot properly consider the submitted evidence to be dispositive of the issue of actual confusion. Although an affirmative showing of actual confusion would have undoubtedly bolstered plaintiff's case, it is not a rigid requirement "since actual confusion is very difficult to prove and the [Lanham] Act requires only a likelihood of confusion as to source." *Lois Sportswear*, 799 F.2d at 875 (citation omitted).

Similarly, any inferences drawn from plaintiffs' assertions regarding defendants' intent should be drawn in favor of defendants.[1] Nevertheless, even attributing good faith to defendants in adopting their name, the Lanham Act does not require intentional copying, and "intent is

---

1. Plaintiff also alleges that defendants use the mark "AMEX" on the license plates of their cars. It seems unlikely to the Court that the use

of *both* the AMERICAN EXPRESS and AMEX marks, both of which are registered marks belonging to plaintiff, was mere coincidence.

largely irrelevant in determining if consumers likely will be confused as to" the source of a product or service. *Id.* Accordingly, the Court finds that these two factors remain largely neutral under an application of the *Polaroid* factors.

## Quality of Defendant's Services and Sophistication of the Buyer

Plaintiff does not contend that defendants' services are not of a high quality; plaintiff merely contends that it has no ability to control the quality of defendant's services. To this issue, the Second Circuit has noted the potential irony in applying the "quality" factor within a likelihood of confusion analysis; to wit, if the product or service is of an equally high standard of quality this might lead to increased confusion as to its source. *Id.*

Similarly, plaintiff argues that the sophistication of the consumer will not mitigate the likelihood of confusion. Here, no matter how sophisticated the consumers are, they are not necessarily sophisticated about the source of origin of defendants' service. *See Centaur Communications,* 652 F.Supp. 1105, 1113 (noting that "even a highly sophisticated and discriminating class of consumers cannot be relied upon to allay confusion when the marks and products are nearly identical"), *aff'd,* 830 F.2d 1217 (2d Cir.1987). In fact, plaintiff suggests that consumer sophistication is likely to exacerbate confusion because knowledgeable consumers are more likely to know that plaintiff provides travel services and arranges for transportation. Inasmuch as defendants make no argument as to the sophistication of the consumers, even viewed in a light most favorable to AELS, the lack of any counter-argument does nothing to support defendants' case.

In short, defendants' papers do little more than claim that the likelihood of confusion is a material issue of fact, however, such a posture ignores the fact that the Second Circuit has ruled otherwise. *Lois Sportswear,* 799 F.2d at 876. Moreover, as discussed above, the obvious strength of plaintiff's mark, combined with the remarkably close, if not exact, similarity of the marks, and the proximity of the products, all strongly support a finding of likelihood of confusion. In addition, the bulk of the remaining factors, although not definitively weighing in plaintiff's favor, nevertheless tend to support a finding of likelihood of confusion. Even if viewed most favorably to defendants, the quality of the services and sophistication of the consumer factors add no support to defendants' position, and as discussed above bolster plaintiff's arguments. Accordingly, for the reasons stated above, a likelihood of confusion exists sufficient to create violations of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a). It is to be further noted that such a finding weighs in favor of plaintiff's argument for a preliminary injunction, in that plaintiff has shown a likelihood of success on the merits. However, before addressing the issue of irreparable harm, the Court turns to address the merits of plaintiff's state law dilution claim.

### Anti–Dilution Statute

New York's Anti–Dilution statute was enacted to protect distinctive trademarks from being "whittled" away to the point at which they are no longer distinctive. N.Y.Gen.Bus.Law § 368–d (McKinney 1984). More specifically, the statute provides that:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

*Id.* Thus, to establish a claim under the New York statute a plaintiff need not prove likelihood of confusion. *See id.; see also Warner Bros., Inc. v. American Broadcasting Cos.,* 720 F.2d 231, 248 (2d Cir.1983); *Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F.2d 621, 624 (2d Cir.1983) (noting that under § 368–d, "[n]either competition between the parties nor confusion about the source of products ... appears to be necessary to state a cause of action for

dilution") (citations omitted). Accordingly, a plaintiff need only establish the distinctiveness of its mark and the possible "blurring" of the mark sufficient to warrant protection from dilution. *See Warner Bros.*, 720 F.2d at 248. Thus, in order to show a likelihood of success on its dilution claim, for preliminary injunction purposes, plaintiff must show that its mark is of a distinctive quality or that it has acquired secondary meaning. *Sally Gee*, 699 F.2d at 625; *see also American Express*, 10 U.S.P.Q.2d 2006 (S.D.N.Y.1989). In addition, plaintiff must show a likelihood of dilution. *See Sally Gee*, 699 F.2d at 625–26.

As discussed above in the context of the Lanham Act claims, plaintiff holds a distinctive mark, and based on the discussion above this Court finds the mark to be distinctive for the purposes of § 368–d. The mark is in no way descriptive or generic; the words AMERICAN EXPRESS, standing by themselves, have no meaning except those qualities which have been developed by plaintiff's promotion and continued use of the mark. *See P.F. Cosmetique, S.A. v. Minnetonka Inc.*, 605 F.Supp. 662, 672 (S.D.N.Y.1985) (noting "[t]o call a mark distinctive is to imply that it is the product of arbitrariness or fancy."); *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162, 1166 (Ct.App.1977).

In addition, this Court finds that defendants' use of the AMERICAN EXPRESS mark would "whittle away" the distinct quality of plaintiff's mark. *See Allied Maintenance*, 399 N.Y.S.2d at 632, 369 N.E.2d at 1166. In *Allied*, the New York Court of Appeals reasoned as follows:

> Thus, it would be of no significance under [§ 368–d] that Tiffany's Movie Theatre is not a competitor of, nor likely to be confused with Tiffany's Jewelry ... The harm that section 368–d is designed to prevent is the gradual whittling away of a firm's distinctive trademark or name. It is not difficult to imagine the possible effect which the proliferation of various noncompetitive businesses utilizing the name Tiffany's would have upon

the public's association of the name Tiffany's solely with fine jewelry. The ultimate effect has been appropriately termed dilution.

*Id.*

In the case at bar, applying both the reasoning of *Allied* and § 368–d itself, it is apparent that there is a likelihood of dilution of plaintiff's mark. The documented effort which plaintiff has undertaken to establish and promote its mark, as well as the public image which it has developed with equal resolve, support its entitlement to protection from dilution. *See American Express*, 10 U.S.P.Q.2d 2006 (S.D.N.Y.1989). Accordingly, plaintiff has met its burden in showing its right to protection under § 368–d, as well as a likelihood of success on that claim.

*Irreparable Harm*

The Second Circuit has noted that "establishing a high probability of confusion as to sponsorship almost inevitably establishes irreparable harm." *Church of Scientology Int'l v. Elmira Mission*, 794 F.2d 38, 41 (2d Cir.1986). Put another way, "[i]n a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1)." *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir.1979); *Eli Lilly and Co. v. Revlon, Inc.*, 577 F.Supp. 477, 482 (S.D.N.Y.1983). Plaintiff herein having met the standard for summary judgment with respect to both the Lanham Act claims and the New York State dilution claim, this Court finds that irreparable harm has likewise been established. Accordingly, plaintiff's motion for a preliminary injunction, as well as summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, is granted.

*Defendants' Counterclaims*

As noted above, defendants counterclaim for both breach of license and bad faith and deception. Plaintiff moves to dismiss these counterclaims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On a motion to dismiss, the allegations of the complaint must be accepted as true, *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079,

1081, 31 L.Ed.2d 263 (1972), and the complaint must be construed in a light most favorable to plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Furthermore, a complaint cannot be dismissed for failure to state a claim unless it appears, beyond a doubt, " 'that the plaintiff can prove no set of facts in support of [a] claim which could entitle him to relief.' " *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984) (citations omitted), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). For the reasons stated below, plaintiff's motion to dismiss is granted.

■ The first of AELS' counterclaims is for breach of a license. Defendants charge that their service contract with plaintiff amounted to a license from plaintiff to use the mark AMERICAN EXPRESS. However, defendant does not point to any language or clause in the service contract which would suggest a license, and the Court fails to find any such language. Even when viewed in a light most favorable to defendants, the section of the contract entitled "Displaying Promotional Material" could not reasonably be read as granting the service establishment any more than the right to advertise that the establishment accepts the AMERICAN EXPRESS Card. Moreover, even if there had been any way in which this service contract might have been construed as suggesting a license, the contract was cancelled as of April 19, 1991, and any possible license would have been revoked at that time. Consequently, since defendants do not even *allege* facts sufficient to survive the motion to dismiss, *Dahlberg,* 748 F.2d at 88, this counterclaim is dismissed.

The second of AELS' counterclaims generally alleges bad faith and deception. Defendants point to no law or statute which would support this cause of action. In addition, defendants have alleged no facts

to support even an inference that plaintiff authorized or licensed defendants to use plaintiff's marks. Thus, the second counterclaim is likewise dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

*Laches*

■ There appears to be a factual dispute as to when plaintiff first learned of defendants' use of its mark. AELS would impute the knowledge to plaintiff in November of 1989, when the initial service contract was executed. Defendants also claim that those responsible for monitoring use of the AMERICAN EXPRESS mark were aware of defendants' use since January of 1990, and thus defendants argue that plaintiff's complaint is barred by laches. On the other hand, plaintiff denies any knowledge of defendants' infringement until March 1991.[2] However, even assuming plaintiff had knowledge of defendants' use as far back as November 1989 or January 1990, plaintiff would not be barred by the doctrine of laches.

■ Aside from the fact that the delay was at most sixteen months, mere delay alone does not give rise to a claim of laches. In order for delay to constitute a claim of laches it must be an inexcusable one which has consequently prejudiced the innocent user. *Johanna Farms, Inc. v. Citrus Bowl, Inc.,* 468 F.Supp. 866, 880 (E.D.N.Y.1978); *Majorica, S.A. v. R.H. Macy & Co.,* 762 F.2d 7, 8 (2d Cir.1985). The only assertion of prejudice by defendants herein is within their memorandum, in which it is stated: "Defendants claim of prejudice is based on hardship, loss of revenue and significant costs associates [sic] with promoting a new name." *See* Defendants' Memo. at 16. In addition to the fact that the defense of laches "requires more by way of showing prejudice than the simple fact that the business continued during

---

**2.** More particularly, plaintiff argues that the initial service contract, as "keyed into a computer," was handled by a low-level clerical employee in Florida. However, employees of plaintiff who are charged with protection of plaintiff's trademark apparently learned of defendants' use on March 7, 1991, and sent a cease and desist letter

on March 8, 1991. *See* Plaintiff's Memo. at 31. Thus, plaintiff argues that there is no evidence of delay by plaintiff's policy-making level staff. *Id.* However, even charging plaintiff with the period of delay alleged, the Court rejects defendants' laches argument for the reasons stated above.

the period of delay," *Cuban Cigar Brands N v. Upmann Int'l, Inc.*, 457 F.Supp. 1090, 1098 (S.D.N.Y.1978), *aff'd*, 607 F.2d 995 (2d Cir.1979), the facts as offered by defendants' own affidavits are not supportive of a claim of laches.

More particularly, the affidavit of Harvey Halperin, Vice President of sales for AELS, most illustratively describes the AELS operation as a "small local business" which is operated on a rotating basis out of the homes of AELS' three drivers; the drivers' wives each take turns answering the phones while their husbands are out driving. *See* Halperin Aff. paras. 14, 15. In addition, Halperin states "I regularly solicit business from current and potential customers of AELS." *Id.* at para. 13. Nowhere do defendants allege any specific costs associated with changing their name. They characterize their business as being highly local in nature, and claim that all of their customers are "aware that AELS is a small local business and that Ralph Cantone, Donald Barfield and I drive for the business." *Id.* at para. 16. This plainly suggests that AELS' customers know the drivers and are familiar with the defendant business as a local corporation. Although it may be safe to assume that incidental costs exist when changing the name of a business, defendants have not alleged any way in which they have been prejudiced by plaintiff's alleged sixteen-month lag. Consequently, the Court rejects defendants' claim of laches.

## CONCLUSION

For the reasons discussed above, plaintiff's motion for a preliminary injunction is granted. In addition, for the reasons stated above plaintiff's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, as to the trademark infringement, unfair competition and trademark dilution claims are granted. Finally, plaintiff's motion to dismiss defendants' counterclaims for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is granted. Plaintiff is directed to settle an appropriate

judgment within fifteen days of the date of this Memorandum and Order.

SO ORDERED.