John C. DONAHUE, Plaintiff-Appellant,

v.

**WINDSOR LOCKS BOARD OF FIRE COMMISSIONERS, John R. Colli, Jr., Russell C. Gabrielson, and John R. Colli, III, Defendants-Appellees.**

**No. 90, Docket 87–7345.**

United States Court of Appeals, Second Circuit.

Argued Nov. 5, 1987.

Decided Nov. 25, 1987.

Gregg D. Adler, Kestell, Pogue, & Gould, Hartford, Conn. (Susan Price-Livingston, on the brief), for plaintiff-appellant.

James J. Szerejko, Halloran, Sage, Phelon & Hagarty, Hartford, Conn. (Lisbeth R. Spoll, Paul W. Smith, Windsor Locks, Conn., Andrew O'Keefe, Jackson, O'Keefe & Dunn, Hartford, Conn., on the brief), for defendants-appellees.

Before KAUFMAN, PIERCE and MINER, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The fundamental obligation of the federal courts is to adjudicate disputes. Not all controversies present triable issues, however, and the courts have a responsibility to vigilantly weed out those cases that do not merit further judicial attention. The procedural tool of summary judgment enables courts to terminate meritless claims, but this potent instrument must be used with the precision of a scalpel. The courts must take care not to abort a genuine factual dispute prematurely and thus deprive a litigant of his day in court.

In the instant controversy, the district court granted summary judgment too hastily on appellant's first amendment claims. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

## BACKGROUND

On each summary judgment application, it is necessary to carefully examine the facts. This appellant, John C. Donahue, has been a member of the Windsor Locks Volunteer Fire Department for more than seventeen years. Twice during his lengthy tenure, Donahue publicly challenged firehouse practices. He now charges that his views evoked prolonged harassment from the defendants.

Donahue's first public complaint arose out of his wife's application to join the Fire Department in 1978. The Department, which had only male members then—and still included no women at the time this suit was filed—refused to admit Mrs. Donahue. Believing that his wife had been discriminated against based on gender, Donahue complained to the affirmative action officer

for the Town of Windsor Locks in 1981. When this failed to generate any action, he wrote to the Connecticut Commission on Human Rights and Opportunities. The Commission also failed to respond. Thereafter, Donahue took his protest to the press, publicly denouncing the Department's decision to reject his wife's application.

Donahue's second complaint against a firehouse practice stemmed from a closed meeting of the Board of Fire Commissioners. Because Donahue considered the non-public gathering to be in violation of the state's Freedom of Information Act, he filed a complaint with the Connecticut Freedom of Information Commission in June of 1983. The Commission upheld Donahue's complaint.

Donahue alleges that these two incidents have caused the defendants to act in concert to harass him. He points to a series of events in support of his charge, beginning with Chief John R. Colli, Jr.'s formal recommendation to the Board to dismiss him in June, 1983. Chief Colli admits that he harbored ill-feelings toward Donahue because of the adverse publicity generated against the Department. He also admits that his animosity colored his recommendation. In spite of his strong feelings, however, the Commission rejected Colli's recommendation to dismiss Donahue in January of 1984.

According to Donahue, the dismissal recommendation was only the start of the vendetta. He avers that soon after the Board's decision, Colli's harassment degenerated into attempts to foment disputes between him and his co-workers, suspend him unnecessarily, and generally chill his exercise of free speech. Donahue perceived this as pressure for him to resign, but he refused to acquiesce. He refused to relinquish his position at the firehouse in the face of this retaliation for his allegedly legitimate exercise of protected speech.

In April, 1984, Donahue strongly verbalized his anger with a co-worker, Lieutenant Peter D. Coffey, at the firehouse. Donahue used profane language during that argument and, a few days later, Coffey filed a formal written complaint. Donahue concedes the accuracy of the complaint, but he asserts that it was prepared by Chief Colli to harass him. Coffey's deposition lends support to this; it reveals that his intent in complaining to Chief Colli was to obtain an internal resolution, but that Chief Colli used the opportunity to urge a formal complaint. The use of foul language was certainly commonplace in the fire station, but Donahue received a suspension of twenty days. He asserts that a firefighter had not been officially disciplined for using profanity since 1969.

Shortly thereafter, Coffey and his wife began receiving threatening letters and phone calls. Initially, Coffey attributed these actions to Donahue. A handwriting expert, in an affidavit, however, identified one of the threatening letters as written by Chief Colli. Another letter included a copy of Donahue's personal journal containing his private thoughts and comments about family, friends, and co-workers. The journal was sent anonymously, but Donahue believes Chief Colli circulated it. Chief Colli did in fact possess Donahue's journal in 1982, but he insists he threw it into a dumpster on the advice of the Town Attorney.

Coffey quickly turned over all of the materials he had received in the mail to Russell Gabrielson, the Chairman of the Board. Gabrielson contends that he too, like Chief Colli, sought to dispose of these papers. He states that he placed the materials in his stove and lit it. Apparently the journal did not burn, however, because he retrieved it undamaged from the stove three months later. Gabrielson's copy of the journal was finally returned to Donahue in June 1986, almost a year after the complaint was filed.

Donahue also alleges that Gabrielson, like Colli, sought to force his resignation from the Department. To support this contention, he points to the Board's Executive Session on July 11, 1984, in which Chairman Gabrielson insisted that Donahue's complaints of gender-based discrimination and Freedom of Information Act violations were "the icing on the edge of the cake."

On October 9, 1984, Donahue was involved in another altercation at the firehouse, this time with Lieutenant John R. Colli, III, Chief Colli's son. The subject of the dispute was the Department's minute book. Colli III concedes that Donahue was reading the book initially, but charges that when he told Donahue he required the book to prepare for a meeting, Donahue became belligerent and used abusive and profane language. Colli III resigned the following day. In his resignation letter, Colli III stated that he feared "physical retaliation" from Donahue because, during the argument, Donahue had "lost all control of temper, swearing at me, shaking his fist at me, and warning me of retaliation." His letter was posted at the firehouse. Donahue, on the other hand, claims that Colli III provoked the dispute and that at no time did he threaten "physical" retaliation. Instead, he stated only that he would report Colli III to the Freedom of Information Commission if the harassment continued.

In July, 1985, Donahue brought suit in the District Court for the District of Connecticut, alleging violations of 42 U.S.C. § 1983 and conspiracy to deny his rights to free speech and privacy.[1] He sought an injunction and damages against the Windsor Locks Board of Fire Commissioners, Chief Colli, Gabrielson, and John Colli, III.

After discovery proceedings, the district court granted summary judgment in favor of all the defendants on all the claims. The judge concluded that although Donahue had stated a constitutionally cognizable injury, he raised no genuine issues of material fact. Regarding the first amendment claim, the judge stated that "there is no basis for finding that any act of a defendant, as it may have impacted on plaintiff, was intended to affect his right to free speech." The court similarly disposed of Donahue's privacy claim. Without these underlying claims, the conspiracy, municipal liability, and pendent state claims had

to fail as well. Donahue appeals this decision.

## DISCUSSION

A summary judgment motion presents a judge with an arduous task, and this appellant's aggressive behavior has not made our undertaking any easier. The Roman philosopher Plautus warned us that there is no smoke without fire but, if this were always true, federal courts would not be able to distinguish between meritless and meritorious suits. Here, however, Plautus's advice is most appropriate. Although Donahue's complaint raises mostly smoke, it also reveals a flame that should have precluded summary judgment against him.

Although the basic principles for granting summary judgment are well-settled, the frequency of cases in which it is granted improvidently persuades us that these tenets bear repetition. Fed.R.Civ.P. 56(c) provides, in part, that summary judgment shall be rendered only when a review of the entire record demonstrates "that there is no genuine issue as to any material fact." The burden falls on the moving party to establish that no relevant facts are in dispute. *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975); *accord Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). Therefore, not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them. *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 313 (2d Cir.1981), *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

1. Donahue also alleged pendent state claims in defamation, invasion of a common law right of

privacy, and conversion of property.

■ Properly employed, summary judgment allows the court to dispose of meritless claims before becoming entrenched in a frivolous and costly trial. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). It must, however, be used selectively to avoid trial by affidavit. *Judge v. Buffalo*, 524 F.2d 1321 (2d Cir.1975). Hence, the fundamental maxim remains that on a motion for summary judgment a court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman*, 524 F.2d at 1319–20. As long as the plaintiff has adduced sufficient facts to substantiate the elements of his claim, summary judgment is inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Against this background, we consider whether Donahue's showing of facts would warrant a jury's conclusion that he had made out each of the elements of his case. To recover on a first amendment claim under § 1983, a plaintiff must demonstrate that his conduct is deserving of first amendment protection and that the defendants' conduct of harassment was motivated by or substantially caused by his exercise of free speech. *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

As Thomas Emerson, the first amendment scholar noted, free speech is most valuable when it relates to the exigencies of the time. T. Emerson, *The System of Freedom of Expression* (1970). Issues of gender-based discrimination and governmental decisions made in "smoke-filled" rooms are topical concerns in our society. Speech regarding these issues functions as a "check" upon the abuses by government. Moreover, it is in line with the greatest of American traditions, practiced by distinguished libertarians from Adams to Whitman, to inform the public of inequities.

■ Thus Donahue's claims of gender-based discrimination and Freedom of Information Act violations fall within the first

amendment's protective ambit: both were matters of public concern. *See Wood v. Georgia*, 370 U.S. 375, 392, 82 S.Ct. 1364, 1374, 8 L.Ed.2d 569 (1962). *Cf. Callaway v. Hafeman*, 832 F.2d 414, 416–17 (7th Cir.1987). That the underlying events were primarily of significance to Donahue and his wife neither diminishes the public importance of these concerns nor strips his speech of protection. *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). In addition, Donahue did not surrender his right to speak without government interference when he joined a public agency. His position as a fireman, however, may be a factor in determining whether his speech warrants less protection than it otherwise would. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). As this Court noted in *Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17 (2d Cir.1979), the government has a legitimate interest in the smooth functioning of a public facility and, especially, in preserving the "esprit de corps" that is essential to a fire department's joint endeavor of saving lives. *Janusaitis*, 607 F.2d at 26. However, we find that Donahue's speech may not have been so abrasive as to affect the harmonious relationship among the members of his fire force. His comments do not seem to have been personally directed at any of his co-workers, nor were they necessarily intended to disrupt the routine operation of the firehouse. Instead, a rational juror could conclude that they were reasonably designed to ensure the fairness of practices in the firehouse.

Had the district court determined after a trial that Donahue's conduct seriously impaired the efficiency of the firehouse, the outcome may have been different. *See Janusaitis*, 607 F.2d 17. Upon a *de novo* review of the entire record, however, we find the defendant's interest in preserving harmony does not outweigh Donahue's exercise of free speech in this instance. Unless an impairment of loyalty, harmony, efficiency, or another similarly cherished value can be demonstrated, the American

tradition of speaking out against inequities must not be subject to sanction.

The district court also concluded that defendants' harassment was unrelated to Donahue's speech. We cannot agree. The suspensions, the dismissal recommendations, the letters allegedly written by Chief Colli and the comments at the Board meeting raise a genuine issue whether defendants were acting in retaliation for Donahue's conduct. They can lead, at least, to an inference of a legally-cognizable "chilling effect" upon Donahue's exercise of free speech. *Yoggerst v. Stewart*, 623 F.2d 35, 39 (7th Cir.1980). Of course, the defendants' actions may be construed as "warnings" to Donahue that he would be discharged or "constructively discharged" through harassment if he persisted in this conduct. *See generally Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1186 (2d Cir. 1987). Donahue has demonstrated much more than smoke in his charges, thus he is deserving of a jury's resolution of these issues.

The district court also granted summary judgment on the privacy issue, but Judge Dorsey mischaracterized the claim. He understood it to involve "public debate as to plaintiff's conduct as a volunteer fireman." Instead, the linchpin of Donahue's claim is that Chief Colli and Chairman Gabrielson wrongfully retained his personal diary and then disclosed certain portions to others. Although these contentions do not state a claim for a deprivation of the constitutional right to privacy, *see Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), they are sufficient to raise a serious question about the intent of Colli and Gabrielson. Summary judgment is inappropriate where the allegation is that action was taken in retaliation for an exercise of constitutionally protected freedoms. The charges concerning the diary are part of the larger question for the jury whether defendants harassed Donahue in retaliation for his exercise of first amendment rights.

The jury must consider the entire tapestry of events before making its decision.

■ With the first amendment issue reopened, the grant of summary judgment on the other claims—those of conspiracy and municipal liability—should be reversed as well.[2] A reasonable jury could find that defendants agreed or had an understanding to deprive Donahue of his constitutional rights. Similarly, a factfinder, in considering the defendants' conduct toward Donahue, might conclude that the municipality, through its authorized decisionmakers, had adopted a pattern of harassment that violated Donahue's constitutional rights. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

Finally, we note the words of the Seventh Circuit Court of Appeals on a similar dispute:

> We regret that this trivial episode, arising from the daily grist of personnel management matters at a State agency, has been elevated to the status of a "federal case." But it seems to us that the management ... is most at fault in what appears to be a ponderously inappropriate reaction....

*Yoggerst*, 623 F.2d at 41.

The decision of the court below is reversed and remanded for further proceedings not inconsistent with this opinion.

---

**2.** With the federal claims reinstated, the district court should adjudicate the pendent state claims as well.