**In re KEY BOOK SERVICE, INC., t/a M & B Fulfillment Service & Books Unlimited, Debtor.**

**REGNERY–GATEWAY, INC., Architectural Book Publishing Company, Inc., Bicycle Books Publishing, Inc., Chiron Publications, Clear Light Publications, Inc., Congressional Quarterly Inc., Council on Foreign Relations, DC Heath and Company, Farragut Publishing, Fromm International Publishing Corporation New York, Garland Publishing Inc., Gemstone Press Publishers, Green Hill Publishers, Inc., Greenwood Press, Inc., the Harvard Common Press, Hill & Company, Publishers, In-**

---

stitute for Contemporary Studies, Institute for Media Analysis, International Broadcasting Services, Ltd., Jameson Books, the Kiplinger Washington Editors, Inc., Larson Publications, Leobuchlung, Lime Tree Publications, Marion Boyars Publishers Ltd., Mustang Publishing, Owl Creek Publishing, Inc., Pergamon–Brassey's International Defense Publishers, Inc., Rowan Tree Press, Ruggles De Latour, Inc., Thomas Reed, Warman Publishing Co., Inc., and World Leisure Corporation, on their own behalf and on behalf of the entire class of entities similarly situated, Plaintiffs,

v.

KEY BOOK SERVICE, INC. d/b/a M & B Fulfillment Services, Kampmann and Company, Inc., and Connecticut Bank and Trust Company, N.A., Defendants.

In re KAMPMANN AND COMPANY, INC. a/k/a Kampmann Distribution Services, Kampmann Book Distribution Co., Debtor.

REGNERY–GATEWAY, INC., Architectural Book Publishing Company, Inc., Bicycle Books Publishing, Inc., Chiron Publications, Clear Light Publications, Inc., Congressional Quarterly Inc., Council on Foreign Relations, DC Heath and Company, Farragut Publishing, Fromm International Publishing Corporation New York, Garland Publishing Inc., Gemstone Press Publishers, Green Hill Publishers, Inc., Greenwood Press, Inc., the Harvard Common Press, Hill & Company, Publishers, Institute for Contemporary Studies, Institute for Media Analysis, International Broadcasting Services, Ltd., Jameson Books, the Kiplinger Washington Editors, Inc., Larson Publications, Leobuchlung, Lime Tree Publications, Marion Boyars Publishers Ltd., Mustang Publishing, Owl Creek Publishing, Inc., Pergamon–Brassey's International Defense Publishers, Inc., Rowan Tree

Press, Ruggles De Latour, Inc., Thomas Reed, Warman Publishing Co., Inc., and World Leisure Corporation, on their own behalf and on behalf of the entire class of entities similarly situated,

v.

KAMPMANN AND COMPANY, INC., and Connecticut Bank and Trust Company, N.A., Defendants.

Bankruptcy Nos. 5–89–00287, 5–89–00374.
Adv. Nos. 5–89–0094, 5–89–0095.

United States Bankruptcy Court, D.Connecticut.

May 16, 1990.

Tracy Alan Saxe, Sachs, Berman, Rashba & Shure, P.C., New Haven, Conn., for plaintiffs.

Craig I. Lifland, Zeisler & Zeisler, P.C., Bridgeport, Conn., for Kampmann and Co., Inc.

Barbara H. Katz, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for Connecticut Bank and Trust Co., N.A.

### MEMORANDUM AND DECISION ON MOTIONS FOR SUMMARY JUDGMENT

ALAN H.W. SHIFF, Bankruptcy Judge.

On April 26, 1989, the plaintiffs commenced these adversary proceedings which seek declaratory judgments that the defendants have no interest in unsold books and accounts receivable from books that were sold. On March 12 and 14, 1990, the plaintiffs filed the instant motions for summary judgment, claiming that the material facts necessary for the conclusion that the defendants have no interest in the accounts receivable were enumerated in this court's July 21, 1989 decision which held that Connecticut Bank & Trust Company, N.A. ("CBT") and Key Book Service, Inc. ("Key") had no interest in the unsold books. The motions have been withdrawn against Kampmann and Company, Inc. ("Kampmann"), and Key has not objected.

### I.

The following findings of fact and conclusions of law from the July 21, 1989 decision, familiarity with which is assumed, are material here. *In re Key Book Serv., Inc.*, 103 B.R. 39 (Bankr.D.Conn.1989), *aff'd*, Civ. Nos. B-89-424, B-89-425 (JAC), 1989 WL 221311 (D.Conn. December 13, 1989).

Kampmann performed sales and order fulfillment services for book publishers. As of March 21, 1989, Kampmann was the exclusive distributor and sales representative for approximately sixty-five publishers, who are the plaintiffs in these adversary proceedings. Kampmann's duties included services referred to in the book trade as fulfillment services, such as shipping, billing, collection of accounts receivable, and processing returns. Key bought and sold books for its own account, conducted a book order fulfillment business, and operated a small publishing company.

Prior to February 1, 1988, Kampmann and Key entered into an agreement under which Key was to provide warehouse facilities for the plaintiffs who were under contract with Kampmann. Key and Kampmann entered into a Marketing and Distribution Agreement dated February 1, 1988 (the "Marketing Agreement"), under which Key was to perform certain fulfillment services. Contrary to the assertions of Key and CBT, Key did not purchase books under the Marketing Agreement. On Febru-

ary 25, 1988, CBT and Key entered into a security agreement, which was perfected by a financing statement filed on March 2, 1988 and covered all inventory then owned and thereafter acquired by Key.

On March 9, 1989, Key filed a petition under chapter 11 of the Bankruptcy Code. On March 21, 1989, an involuntary chapter 7 petition was filed against Kampmann in the Southern District of New York, on March 31, 1989, Kampmann filed a petition under chapter 11 in this court, and on May 8, 1989, the two Kampmann cases were consolidated here. At the commencement of these cases, thousands of unsold or returned books, valued at approximately $1,000,000.00, were stored at Key's warehouse at 540 Barnum Avenue, Bridgeport, Connecticut, pursuant to Kampmann's contracts with the plaintiffs and the Marketing Agreement, and an unspecified amount of accounts receivable were due from book purchasers.

On May 31, 1989, an order entered permitting Kampmann to reject all of its executory sales and distribution contracts with the plaintiffs.[1] Kampmann subsequently entered into a contract with National Book Network ("NBN") under which Kampmann is to serve as NBN's sales representative for publishers who contract with NBN for sales and distribution services. Several of the plaintiffs entered into such contracts and their books were to be shipped to NBN in Maryland. On May 31, a restraining order entered which, with the exception of 100 copies of each book title to be used for promotion purposes, enjoined Kampmann from transferring any of the unsold books until an order entered on CBT's motions for adequate protection under § 363(e).

In support of its § 363(e) motion, CBT asserted a security interest in the unsold books pursuant to Connecticut General Statutes § 42a–2–326, which provides in part:

(2) Except as provided in subsection (3), ... goods held on sale or return are subject to [the claims of the buyer's creditors] ... while in the buyer's possession.

(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return.... However, this subsection is not applicable if the person making delivery (a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or (b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or (c) complies with the filing provisions of article 9.

CBT argued that the books were sold to Key and/or Key was a consignee of the books under the Marketing Agreement.

CBT's § 363(e) motion was denied in the July 21 decision because it was found that under the Marketing Agreement Key had no property rights or interests in the books, that § 2–326 was not applicable because the books were not delivered to Key for "sale", and that CBT was not the type of creditor which § 2–326 is intended to protect because it knew that the unsold books were the property of the plaintiffs. *In re Key Book Serv., Inc., supra,* 103 B.R. at 39.

The plaintiffs assert the doctrine of collateral estoppel and argue that the conclusion reached in the July 21 decision was based upon findings which necessarily lead to the conclusion that CBT and Key have no interest in the accounts receivable. CBT counters that there are disputed material issues of fact which preclude the entry of summary judgment. The principal thrust of CBT's argument is that it loaned money to Key in reliance upon Key's claim that it owned the unsold books and accounts receivable, that Kampmann knew

---

**1.** Code § 365(a) provides: "Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

that Key believed it had such an interest and had expressed that opinion to CBT, and that the plaintiffs as principals of Kampmann are therefore estopped from claiming an interest superior to that of CBT or contesting the validity of CBT's security interest. CBT also contends that the Marketing Agreement is ambiguous.

## II.

### A.

Rule 56 Fed.R.Civ.P., made applicable by Bankruptcy Rule 7056, provides:

(c) ... [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

....

(e) ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

In determining whether to grant summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, while "[p]roperly employed, summary judgment allows the court to dispose of meritless claims before becoming involved in a frivolous and costly trial ..., [i]t must ... be used selectively to avoid trial by affidavit." *Donahue v. Windsor Locks Bd. of Fire Comm'r*, 834 F.2d 54, 58 (2d Cir.1987). ■ The moving party has the burden of showing that there are no material facts in dispute, and all reasonable inferences are to be drawn and all ambiguities are to be resolved in favor of the non-moving party.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Donahue, supra*, 834 F.2d at 57 ("[N]ot only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them."). However, to defeat a properly supported motion for summary judgment, the non-moving party "must offer concrete evidence raising genuine disputes of material fact tending to show that his version of the events is more than fanciful ... or, alternatively, must show that the defendant is not entitled to summary judgment as a matter of law." *Johnson v. Carpenter Technology Corp.*, 723 F.Supp. 180, 182 (D.Conn. 1989).

### B.

Collateral estoppel bars "the relitigation of an issue of law or fact that was raised, litigated, and actually decided by a judgment in a prior proceeding between the parties, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim." *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1259–60 (2d Cir.1983). *See also Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 727–28 (2d Cir.1981); *Stone v. Stone (In re Stone)*, 90 B.R. 71, 75 (Bankr.S.D.N.Y. 1988), *aff'd*, 94 B.R. 298 (S.D.N.Y.1988).

■ An issue of fact raised, litigated, and decided in the July 21 decision was whether CBT or Key had any interest in the unsold books under the Marketing Agreement. It was concluded that they did not and since they had none, neither Key nor CBT can have an interest under the Marketing Agreement in the accounts receivable from the sale of books. To hold otherwise would require this court to revisit the findings made in the July 21 decision. Neither Key nor CBT have claimed an interest in the accounts receivable arising out of a source other than the Marketing Agreement. It therefore necessarily follows from the July 21 decision that they have no interest in the accounts receivable.

CBT argues that the plaintiffs are estopped from challenging its interest in the accounts receivable because their agent Kampmann knew CBT was relying on Key's claim that Key owned those accounts, but no authority was cited for that proposition and none has been found. More to the point, Kampmann had no duty to challenge any such claim by Key to CBT, and CBT cannot avoid the consequences of its failure to test the validity of Key's claim by now asserting that it relied upon such claims. I conclude that any knowledge Kampmann had of Key's claim to CBT and any reliance by CBT upon such a claim is immaterial.

CBT's contention that ambiguities in the Marketing Agreement create issues of fact is also unavailing. Further, affidavit statements by Barbara Woelk, a CBT officer, and Harold Levine, Key's president, that they believed that under the Marketing Agreement the accounts receivable would belong to Key are unpersuasive. As the plaintiffs correctly state, the July 21 decision resolved the ambiguities in the Marketing Agreement.

### III.

The plaintiffs motions are granted, and IT IS SO ORDERED.