**UNITED STATES of America, Plaintiff,**

**v.**

**42/30 TABLET BOTTLES and 14–60 CAPSULE BOTTLES, MORE OR LESS, OF AN ARTICLE OF FOOD, LABELED IN PART: (BOTTLE) "NATURE'S PLUS COENZYME Q10 COMPLEX . . .", Defendants,**

**Natural Organics, Inc. and National Nutritional Laboratories, Inc., Claimants.**

**No. CV 89–1626.**

United States District Court, E.D. New York.

Dec. 20, 1991.

Andrew J. Maloney, U.S. Atty., Charles Kleinberg, Asst. U.S. Atty., Stephen J. Riegel, Asst. U.S. Atty., Brooklyn, N.Y., Kenneth Miller, Asst. Chief Counsel, Food and Drug Admin., Rockville, Md., co-counsel, for plaintiff.

Bass & Ullman, by I. Scott Bass, New York City, for claimants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff United States of America ("plaintiff") brings this action as a forfeiture proceeding filed under the Federal Food, Drug and Cosmetic Act (the "Act"), 21 U.S.C. § 301 *et seq.* seeking condemnation of certain articles, including "Germanium Plus" capsules, "Coenzyme Q–10" capsules, "Coenzyme Q–10 30 mg." capsules

and "Immunector" beverage. Claimants, Natural Organics, Inc. and National Nutritional Laboratories, Inc., move, and plaintiff cross-moves, for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

## BACKGROUND

On May 17, 1989, plaintiff filed a verified complaint *in rem* seeking the seizure and condemnation of the above-listed articles. On June 1, 1989, the United States Marshal for the Eastern District of New York, pursuant to a Warrant for Arrest issued by the Clerk of this Court, seized the articles at claimants' places of business. The complaint alleges that the articles of food are adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C) in that they contain food additives, namely Coenzyme Q10 ("CoQ10") and Germanium, which are unsafe within the meaning of 21 U.S.C. § 348(a) and that the articles, being held for sale after shipment in interstate commerce, are subject to seizure and condemnation pursuant to 21 U.S.C. § 334(a)(1). Because plaintiff and claimants agree that there are no material issues of fact before the Court, the resolution of this dispute rests on whether the substances in question may be classified, as a matter of law, as food additives within the meaning of 21 U.S.C. § 321(s) ("§ 321(s)" or "Food Additive Amendment").

## DISCUSSION

A motion for summary judgment may be granted only when there is "no genuine issue as to any material fact ... and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2505, 2552, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The burden is on the moving party to clearly establish the absence of a genuine issue of material fact and "a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Donahue*, 834 F.2d at 57 (citations omitted). With these principles in mind, the Court turns to address the instant motions.

In determining whether the substances in question may properly be classified as food additives, the Court turns first to the language of 21 U.S.C. § 321(s) which reads in pertinent part:

The term "food additive" means any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food ... if such substance is not generally recognized ... to be safe under the conditions of its intended use....

In a stipulation and order signed on August 12, 1991 by United States Magistrate Judge David F. Jordan, the parties agreed that the "generally recognized as safe" issue would not be litigated in this action. Consequently, the determination of whether the substances in question can properly be classified as food additives depends solely on the satisfaction of the first part of the definition set forth in 21 U.S.C. § 321, that is, do the substances in question qualify as ones that "the intended use of which results or may reasonably be expected to result ... in its becoming a component or otherwise affecting the characteristics of any food[?]"

 The parties agree that both of the substances in question, CoQ10 and Germanium, qualify as foods within the meaning of 21 U.S.C. § 321(f)(1) and (3) which define food as "articles used for food or drink for man or other animals" and "articles used for components of any such articles." Claimants contend, in essence, that the fact that CoQ10 and Germanium qualify as foods precludes them from being classified as food additives under 21 U.S.C. § 321(s). The Second Circuit, however, has stated that "[w]e do not believe that a substance gains immunity from [being categorized as a food additive] merely because it also qualifies as a food." *National Nutritional Foods Ass'n v. Kennedy*, 572 F.2d 377, 391 (2d Cir.1978) (citations omitted). *See also United States v. An Article of Food ... Food Science*, 678 F.2d 735, 737–39 (7th Cir.1982); *United States v. An Article of Food ... Orotic Acid*, 414 F.Supp. 793,

793–94 (E.D.Mo.1976), *aff'd mem.*, No. 76–1554 (8th Cir.1977).

 This Court finds further support for classifying the ingredients of these dietary or nutritional supplements as food additives. First, it is a well-established canon of statutory construction that the plain meaning of the statute is dispositive if it is clear and unambiguous and not contrary to legislative intent. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). This Court finds it clear that both CoQ10 and Germanium satisfy the plain meaning of the "component" requirement of the food additive definition because they are one or two of several ingredients in each of the dietary supplements produced by claimants. Moreover, "remedial legislation such as the Food, Drug and Cosmetic Act is to be given a liberal construction consistent with the Act's overriding purpose to protect the public health...." *United States v. Bacto–Unidisk*, 394 U.S. 784, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969). *See also United States v. Nova Scotia Food Prods. Corp.*, 568 F.2d 240, 246 (2d Cir.1977) (citation omitted).

Just as it is clear to this Court that the plain meaning of the food additive definition is not ambiguous, the Court is also convinced that it is not contrary to the intent of Congress. The most valuable piece of legislative history is a congressional committee or conference report on the bill. *National Ass'n of Greeting Card Pubs. v. United States Postal Serv.*, 462 U.S. 810, 832 n. 28, 103 S.Ct. 2717, 2731 n. 28, 77 L.Ed.2d 195 (1983). The 1958 House and Senate Committee Reports accompanying the bill which today is 21 U.S.C. § 321(s) explains that "[t]he legislation covers substances which are added to food." H.R.Rep. No. 2284, 85th Cong., 2d Sess. 3 (1958); S.Rep. No. 2422, 85th Cong.2d Sess. 5 (1958).

Claimants contend, however, that the Food Additive Amendment was enacted to restrict only the use of chemical substances in the processing and preservation of food and cite fragmented excerpts from congressional hearings to support this prem-ise. However, "[a]lthough Congress was primarily concerned with substances used by a food processor, neither the language nor the history of the ... Act limits its application to such substances." *United States v. Ewig Bros. Co., Inc.*, 502 F.2d 715, 722 (7th Cir.1974) (footnote omitted).

The legislative intent to treat nutrients as food additives is further evidenced by the action of Congress in 1976 when, in amending the Act, the Senate excluded a provision prohibiting the FDA from regulating vitamins, minerals and associated ingredients as food additives, explaining: "[T]here are some nutrients and ingredients or natural chemicals which are tangentially a part of vitamins or minerals which currently may be considered food additives because of their potential toxicity. We did not wish to prevent the FDA from acting in these circumstances." *National Nutritional Foods*, 572 F.2d at 392 (quoting S.Rep. No. 94–509, 94th Cong. 1st Sess. 40–41 (1975)).

Finally, even if, *arguendo*, the language of the statute were ambiguous on the question presented here, the Court must defer to the FDA's construction of the statute if it is "permissible." *Rust v. Sullivan*, — U.S. ——, 111 S.Ct. 1759, 1767–69, 114 L.Ed.2d 233 (1991); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnote omitted). However, in determining whether a particular construction is permissible, "the court need not conclude that the agency construction was the only one it could permissibly have adopted ... or even the reading the court would have reached if the question initially had risen in a judicial proceeding." *Chevron U.S.A., Inc.*, 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11. This Court finds that the FDA's interpretation of CoQ10 and Germanium as food additives is, at the very least, permissible and thus takes precedence over the interpretation offered by claimants. Accordingly, claimants' motion for summary judgment must be denied and plaintiff's cross-motion for summary judgment must be granted.

## 256

### CONCLUSION

For the reasons set forth above, claimants' motion for summary judgment is denied and plaintiff's cross-motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment for the United States of America.

SO ORDERED.