101 F.3d 109
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
James J. LARKIN, Plaintiff-Appellant,
v.
TOWN of West Hartford, and both individually and in their
official capacities, Barry Feldman; Michael
Parker; James Francis; Joseph
Fioretti, Laurie Murray;
Patricia Gray, Defendants-Appellees.
 No. 95-7728.
 United States Court of Appeals, Second Circuit.
 March 25, 1996.
 
 APPEARING FOR APPELLANT: James S. Brewer, West Hartford, CT.
 APPEARING FOR APPELLEES: David Thomas Ryan, Robinson & Cole, Hartford, CT.
 D.Conn.
 AFFIRMED.
 Present MINER, WALKER, Jr., and LEVAL, Circuit Judges.
 
 
 1
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the District of Connecticut, it is hereby
 
 
 2
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 
 
 3
 This cause came on to be heard on the transcript of record and was argued by counsel.
 
 
 4
 Plaintiff-appellant James J. Larkin appeals from a judgment entered in the United States District Court for the District of Connecticut (Dorsey, C.J.) granting summary judgment in favor of defendants-appellees on Larkin's 42 U.S.C. §§ 1983 and 1985 claims and dismissing his state law claims without prejudice.
 
 
 5
 Larkin was a Lieutenant in the West Hartford Fire Department (the "Fire Department") until his retirement on December 31, 1992. Barry Feldman is the Town Manager of the Town of West Hartford (the "Town"). Michael Parker and Joseph Fioretti are the Town's Fire Chief and a Deputy Fire Chief, respectively. Patricia Gray is a firefighter for the Town. James Francis is the Town's Director of Employee Services and Laurie Murray is a Human Resource Specialist for the Town.
 
 
 6
 In early 1988, the Fire Department established the West Hartford Fire Apparatus Selection Committee (the "Committee") to provide the specifications for new fire equipment that the Town planned to purchase. The Committee was composed of 12 members, and Fioretti served as chairman. On December 16, 1989, the Town contracted to purchase four new fire trucks from a company. Larkin apparently believed that the bidding process had been improperly conducted. Larkin asserts that he discussed his concerns about the bidding, albeit "[i]n generalities," with Fioretti, and that he "vaguely" talked about the bid specification process at a meeting with Parker, Fioretti, and others. However, prior to his retirement, Larkin never submitted a written complaint regarding the purchase of the new fire equipment, nor did he complain at any Town Council meeting. In fact, Larkin never even saw the bid specifications or the contract for the purchase of the new fire equipment prior to the commencement of this action.
 
 
 7
 On April 21, 1991, Larkin, Gray, and other firefighters responded to a house fire in West Hartford. Larkin believed that Gray improperly left him on the second floor of the house as they were attempting to extinguish the fire. On July 13, 1992, Larkin told Fioretti, "You've got an individual that works for you within your chain of command who left me in a working fire one night." Larkin also complained about Gray's performance at another fire because she "spent most of her time outside sprinkling the roof." He further complained that she had been unable to open the nozzle on a water hose at a car fire. In reference to Gray, Larkin asked a deputy chief, "When is this joke going to stop?"
 
 
 8
 On July 15, 1992, Fioretti met with Gray to discuss Larkin's statements about her. After further meetings, Parker determined that the issue did not warrant referral to the Town's Human Resources Department for investigation. In a letter dated August 14, 1992 to Larkin, Parker stated, "I found no substance to the allegations of sexual harassment misconduct on your part." This letter subsequently was read at a firefighters union meeting by the union president. Thereafter, several persons told Gray that Larkin had said she had accused him of sexual harassment. On October 13, 1992, Gray's attorney wrote a letter to Parker, discussing Gray's concerns of gender discrimination and harassment by Larkin and other firefighters. On October 29th, Parker, Francis, and others met with Gray and her attorney, and Francis subsequently began an investigation into the charges described in the letter from Gray's attorney.
 
 
 9
 In the course of the investigation, Francis and Murray interviewed several members of the Fire Department. In addition, Larkin met with Francis and his staff to discuss the allegations. In a January 28, 1993 memorandum to Feldman, Francis reported that the investigation had determined that Gray had "experienced a hostile work environment," but that this environment was not "directly attributable to any single individual," and instead had been "created by many acts which have the impact of creating a perception of sexism." This memorandum was forwarded to Larkin, who had retired from the Fire Department on December 31, 1992.
 
 
 10
 On June 18, 1993, Larkin commenced the action giving rise to the present appeal. In his complaint, Larkin pleaded a claim under 42 U.S.C. § 1983 in which he alleged that the defendants violated his First Amendment right to free speech by investigating him for sexual harassment. The investigations were said to be in retaliation for his criticism of the fire equipment purchases. In addition, Larkin claimed that the defendants conducted the sexual harassment investigations to deter him from speaking on matters of public concern. Larkin also alleged that the defendants violated his Fourteenth Amendment right to procedural due process, and that the Town had adopted a custom of violating his constitutional rights. Pursuant to 42 U.S.C. § 1985, Larkin claimed that the defendants conspired to violate his constitutional rights as a result of his views concerning the fire equipment purchases. Finally, Larkin pleaded various state law claims.
 
 
 11
 On February 7, 1994, after the parties had conducted discovery, the defendants moved for summary judgment on all counts of Larkin's complaint. The district court on June 21, 1995 granted summary judgment in favor of the defendants on Larkin's federal law claims and dismissed Larkin's state law claims without prejudice.
 
 
 12
 On appeal, Larkin argues that the district court erred in granting summary judgment in favor of the defendants on his § 1983 retaliation claim. First, he contends that the district court failed to draw all reasonable inferences in his favor and resolved disputed material facts in favor of the defendants. Second, Larkin asserts that the district court erred in finding that the defendants had not retaliated against him in violation of the First Amendment. We reject these contentions.
 
 
 13
 In reviewing the district court's grant of summary judgment, "we apply the same standard as the district court did in deciding the Rule 56 motion and determine de novo whether a genuine issue as to any material fact exists, and if the moving party is entitled to judgment on the merits." Taggart v. Time, Inc., 924 F.2d 43, 45-46 (2d Cir.1991). "[A]ll inferences to be drawn from the materials submitted in the trial court are viewed in a light most favorable to the party opposing the motion." Id. at 46. "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Id.
 
 
 14
 In the present case, although Larkin contends that there are disputed issues of fact, none of these factual issues are material. For instance, Larkin claims that he did not make several comments regarding Gray that others have attributed to him. However, Larkin admitted that, on several other occasions, he criticized Gray. Accordingly, the district court properly determined that there were no genuine issues of material fact.
 
 
 15
 We also reject Larkin's contention that he was entitled to judgment on the merits of his First Amendment retaliation claim. "To recover on a first amendment claim under § 1983, a plaintiff must demonstrate that his conduct is deserving of first amendment protection and that the defendants' conduct of harassment was motivated by or substantially caused by his exercise of free speech." Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir.1987). Even if we were to assume that Larkin's statements concerning the fire equipment purchases were protected under the First Amendment, he did not adduce any evidence to show that the Fire Department's sexual harassment investigations were motivated by, or substantially caused by, his expressions of opinion. Larkin's conclusory allegations that there was no other reason for the Fire Department to have conducted its investigations are not sufficient to establish retaliation in violation of the First Amendment.
 
 
 16
 In his appellate brief, Larkin does not raise his other § 1983 and § 1985 claims. Accordingly, these claims are deemed abandoned, and we do not address them. See United States v. Quiroz, 22 F.3d 489, 490-91 (2d Cir.1994).