**Sandra CRAWFORD, Plaintiff,**

v.

**SYSCO FOOD SERVICES OF CONNECTICUT, LLC, Defendant.**

**Civ. No. 3:07CV00262 (AWT).**

United States District Court, D. Connecticut.

May 20, 2008.

258

Mark S. Loman, Law Office of Mark S. Loman, Bloomfield, CT, for Plaintiff.

Albert Zakarian, David C. Salazar–Austin, Jeffrey Allan Fritz, Day Pitney LLP, Hartford, CT, for Defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

Sandra Crawford ("Crawford") brings this action against Sysco Food Services of Connecticut, LLC ("Sysco"), setting forth claims for racial discrimination in violation of 42 U.S.C. § 2000e et *seq.* ("Title VII") and the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a–60 *et seq.* ("CFEPA"). The defendant has moved for summary judgment on both claims. For the reasons set forth below, its motion is being granted.

### I. FACTUAL BACKGROUND

Sysco is a foreign limited liability company with its principal place of business in Connecticut. It is a food service marketer and distributor. Crawford is an African–American female who has been an at-will employee of Sysco since November 1995. Crawford began as a Customer Service Representative and currently works in the Accounts Receivable Department as a Net Deposit Clerk.

Crawford's primary duties include scanning customer checks and transmitting them to the bank, data entry, keeping a net deposit log that documents batches of checks sent, bundling checks together for further processing by other employees, and if time permits, scanning invoices into a computer. With the exception of scanning invoices when time permits, all of Crawford's duties are completed in her own cubicle. When Crawford has time to scan invoices, she walks to the table where the invoices are located, prepares them by ripping off the edges and repairing any torn invoices, carries the invoices into the adjacent scanning cubicle, and scans the invoices using the scanning machine. The scanning cubicle is not assigned to any

particular employee, and it contains one scanner and two processing machines.

Around 2003–2004, Kelly Johnson ("Johnson"), a Caucasian female, was hired to work in the same department as Crawford. Crawford was assigned to train Johnson. During the first year, Crawford and Johnson got along well. However, during the second year, Crawford felt that Johnson developed an attitude and constantly complained when Crawford took too long to complete work on accounts that Johnson was responsible for. Sysco suggested that Crawford be kinder to Johnson and complete her work on Johnson's accounts in a more timely fashion.

Sysco's company manual includes a policy on sexual harassment and other forms of harassment. The policy states that "[t]he company considers all forms of harassment ... to be a major offense, [such that] [a]ny employee who, after a thorough investigation, is found to have violated this policy, will be subject to disciplinary action, up to and including termination of employment with Sysco Food Services of Connecticut." (Def.'s Mem. Supp. Mot. Summ. J. (Doc. No. 29), Ex. 3–B at 8). The appropriate disciplinary action is determined on a case-by-case basis, and it can range from a verbal warning, to a written warning, to suspension or termination. Crawford was aware of this fact. The company manual sets forth a non-exclusive list of actions and behaviors by employees that are unacceptable, such as "[t]hreatening, intimidating, or assaulting other employees or supervisor." (Id. at 17–18).

Crawford signed a receipt acknowledging that she had been given the company manual. In addition, Crawford received training covering Sysco's policy on harassment.

In June 2004, after several verbal warnings, Crawford received an Employee Disciplinary Report for challenging Sysco's procedures as reflecting favoritism towards Johnson and for making a loud scene in the workplace about work flow, and possibly creating a hostile work environment. Crawford then filed a charge with the Connecticut Commission on Human Rights and Opportunities (CCHRO), claiming that Sysco's imposition of discipline ultimately denied her a salary raise, and had been based on her race and color. However, Crawford was certain that similarly situated Black employees had been given raises. The parties resolved the CCHRO charge through a No Fault Conciliation Agreement, which provided for a salary raise for Crawford.

On September 28, 2005, as Crawford returned from purchasing lunch, she decided to scan some invoices while she ate. En route to begin scanning, Crawford saw Johnson standing in the entrance way to the scanning cubicle. Crawford stopped at a table outside the scanning cubicle, and picked up approximately 2,500 invoices. She turned to enter the scanning cubicle, and said "pardon" at some point before, during, or after her entrance. In the process, Crawford and Johnson made physical contact. Crawford states that she "squeezed in." (Id., Ex. 2 at 92–93). Before or while Crawford was scanning the invoices, Johnson cancelled the job she was running and left the scanning cubicle.

Crawford, fearing Johnson would complain, went directly to see Maryann Rafferty ("Rafferty"), Vice President of Human Resources, to explain what happened in the scanning cubicle, but Rafferty was unavailable. Johnson went directly to Theresa Roy ("Roy"), Johnson's and Crawford's immediate supervisor, who suggested Johnson report the incident to Rafferty. Once Rafferty was available and learned of the incident, she began an investigation by meeting with Johnson at 4 p.m. that same

afternoon. Also, she requested a written statement from Johnson.

The next morning, September 29, 2005, Crawford met with Rafferty. Rafferty requested a written statement from Crawford. Later that day, Crawford met with both Roy and Rafferty to discuss the incident further. After that meeting, Roy and Rafferty met with Kristen Kotler ("Kotler"), Sysco's Controller and Roy's supervisor. The three reviewed the incident and ultimately concluded that Crawford had engaged in intimidating behavior towards Johnson in violation of Sysco's company manual. Their conclusion was based on (1) Johnson's complaint about the incident; (2) Crawford's report on the incident; (3) Crawford's admission that she entered the cubicle without asking Johnson to move or waiting for her to move; (4) the fact that scanning invoices is not time-sensitive work and Crawford could have simply come back later when the cubicle was empty, thereby avoiding any physical contact with Johnson; (5) Crawford's admission that she would have felt intimidated by the physical contact had the roles been reversed; and (6) Crawford's past conduct toward Johnson. Consequently, Crawford was suspended for three days, was given a second Employee Disciplinary Report, and was ordered to make immediate improvements to "avoid future intimidation behaviors." (*Id.*, Ex. 3–I). No disciplinary action was taken against Johnson.

During Crawford's time at Sysco, she has never complained about Johnson. No member of Sysco's management team has ever yelled at or criticized Crawford. Crawford gets along with all the members of Sysco's management team. In addition, Crawford has never heard any comments from Sysco or any of its employees about her race or color. However, Crawford contends that Sysco acted with the intent to discriminate against her because of her race and color. She also contends that Sysco acted with malice and a total disregard of racial animus in the workplace.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987); *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson:* "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir.1997) (quoting *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d. Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock*, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock*, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. *See Anderson*, 477 U.S. at 248, 251, 106 S.Ct. 2505.

## III. DISCUSSION

The plaintiff claims she has been subjected to racial discrimination in violation

of Title VII and CFEPA. Specifically, she contends she was discriminated against because of her race and/or color when she was suspended for three days after the incident with her co-worker, Johnson.

To survive summary judgment in a Title VII case, "[t]he plaintiff must first establish a *prima facie* case by demonstrating that: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. [792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)]." *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir.2006). "The burden of proof that must be met to permit a Title VII plaintiff to survive a summary judgment motion at the *prima facie* stage has been characterized as 'minimal' and '*de minimis.*' " *Jute v. Hamilton Sunstrand Corp.*, 420 F.3d 166, 173 (2d Cir.2005) (citations omitted). "If the plaintiff demonstrates a *prima facie* case, the burden shifts to the defendant employer to provide a legitimate, non-discriminatory reason for the action." *Demoret*, 451 F.3d at 151. "If the defendant makes such a showing, the burden shifts back to the plaintiff to prove discrimination, for example, by showing that the employer's proffered reason is pretextual." *Id.* at 151. This shifting burden approach also applies to claims under CFEPA. *Sorrentino v. All Seasons Services, Inc.*, 245 Conn. 756, 767, 717 A.2d 150 (1998).

█ The defendant concedes that the first three elements of a *prima facie* case under Title VII have been established by the plaintiff here. To establish the fourth element, the plaintiff must show that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. "No one particular type of proof is required to show the [p]laintiff's

termination occurred under circumstances giving rise to an inference of discrimination." *Ofoedu v. St. Francis Hospital, et al.*, No. 04–1707, 2006 WL 2642415, at *14, 2006 U.S. Dist. LEXIS 68704, at *49 (D.Conn. Sept. 13, 2006). A plaintiff can satisfy this element by showing, *inter alia,* disparate treatment, an employer's criticism of the plaintiff's performance in degrading terms, an invidious comment about others in the plaintiff's protected group, or more favorable treatment of employees not in the protected group. *See id.*

█ Here the plaintiff basically argues that the manner in which the defendant handled the September 2005 incident, which led to the three day suspension, was wrong. However, the plaintiff conceded not only that the incident occurred but that she engaged in the specific conduct that formed the basis for the conclusion by Roy, Rafferty, and Kotler that the plaintiff had engaged in intimidating conduct. When an employer reaches a conclusion based on an incident that is admitted to have occurred, mere disagreement with that conclusion is not sufficient to support an inference of discrimination. *See Ofoedu*, 2006 WL 2642415, at *18–19, 2006 U.S. Dist. LEXIS 68704, at *63–64. As in *Ofoedu*, even if the plaintiff can show that the discipline imposed on her by the defendant was undeserved, "faulting others for, or otherwise rationalizing, problems legitimately perceived by [her] employer does not establish pretext." *Ofoedu*, 2006 WL 2642415, at *17–18, 2006 U.S. Dist. LEXIS 68704, at *62–63 (quoting *Taylor v. Polygram Records*, 1999 WL 124456, *10, 1999 U.S. Dist. LEXIS 2583, *27 (S.D.N.Y. Mar. 5, 1999)).

The plaintiff contends that there is support for an inference of discrimination because the defendant has failed to identify what provision of the defendant's policy

 

the plaintiff violated. However, it is undisputed the policy prohibited "all forms of harassment." In addition, the plaintiff contends that the defendant altered its interpretation of the policy in applying the policy to the plaintiff and this supports an inference of discrimination. However, the plaintiff has produced no evidence of the policy being applied differently to a similarly situated employee. *See, e.g., Joiner v. Chartwells & Compass Group North America*, 500 F.Supp.2d 75, 81 (D.Conn. 2007) (noting that the plaintiff's grievance was devoid of any evidence of the defendant's management of other employees, and the record lacked support for the plaintiff's allegations of racially discriminatory discipline).

Finally, the plaintiff contends that the co-worker involved in the September 2005 incident should also have been disciplined and the fact that the defendant did not discipline her too supports an inference that the plaintiff was disciplined because of her race and/or color. However, in substance, this argument is either merely (1) a repetition of the plaintiff's argument that her disagreement with the defendant's decision to suspend her for three days provides support for an inference of discrimination, or (2) one that is equally unavailing, i.e. that an inference of discrimination is supported by the mere fact that she is African–American.

Because the plaintiff has failed to meet even her *de minimis* burden for establishing a *prima facie* case, the defendant is entitled to summary judgment.

## IV. CONCLUSION

For the reasons set forth above, defendant Sysco Food Services of Connecticut, LLC's Motion for Summary Judgment (Doc. No. 28) is hereby GRANTED.

It is so ordered.

The Clerk shall enter judgment in favor of the defendant and close this case.